William A. Nebeker, Esq., AZ State Bar No. 004919
Rosary A. Hernandez, Esq., AZ State Bar No. 020182
Gregory E. Williams, Esq., AZ State Bar No. 020320
Valerie R. Edwards, Esq., AZ State Bar No. 017217
Lisa I. Streu, Esq., AZ State Bar No. 026679
**KOELLER NEBEKER CARLSON & HALUCK, LLP**
3200 North Central Avenue, Suite 2300
Phoenix, Arizona 85012-2443
Telephone: (602) 256-0000
Facsimile: (602) 256-2488
*Attorneys for the Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| JONATHAN E. ROBINSON, a single man; and SALLY J. ROBINSON-BURKE, a married woman; individually and on behalf of a class of similarly situated individuals,<br><br>     Plaintiffs,<br><br>vs.<br><br>GE MONEY BANK, a foreign corporation; WMC MORTGAGE CORP., a California corporation; WELLS FARGO BANK, N.A., a California corporation, dba WELLS FARGO HOME EQUITY and dba WELLS FARGO HOME MORTGAGE, a division of WELLS FARGO BANK, N.A., a California corporation; AMERICA'S SERVICING COMPANY, a foreign corporation and division of WELLS FARGO BANK, N.A., a California corporation; MERSCORP, INC., a Virginia corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a subsidiary of MERSCORP, Inc., a Delaware corporation; COUNTRYWIDE HOME LOANS, INC., a New York corporation; FEDERAL HOME LOAN MORTGAGE CORPORATION, a Virginia corporation; FEDERAL NATIONAL MORTGAGE ASSOCIATION, | Case No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **Violation of Truth in Lending Act, 15 U.S.C. § 1601,** *et seq.*<br>2. **Violation of Real Estate Settlement Procedures Act, 12 U.S.C. § 2601,** *et seq.*<br>3. **Violation of Home Ownership and Equity Protection Act, 15 U.S.C. §§ 1602(aa), 1610, and 1639**<br>4. **Violation of Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq.**<br>5. **Violation of Arizona Consumer Fraud Act, A.R.S. § 44-1522, et. seq.**<br>6. **Conspiracy to Commit Fraud and Conversion**<br>7. **Conspiracy to Commit Fraud Related to MERS System**<br>8. **Intentional Infliction of Emotional Distress**<br>9. **Injunctive Relief**<br>10. **Declaratory Relief** |

a District of Columbia corporation; GMAC MORTGAGE, L.L.C., a Delaware corporation; NATIONAL CITY MORTGAGE, a foreign company and a division of NATIONAL CITY BANK, a foreign company; J.P. MORGAN CHASE BANK, N.A., a New York corporation; CITIMORTGAGE, INC., a New York corporation; HSBC MORTGAGE CORPORATION, U.S.A., a Delaware corporation; AIG UNITED GUARANTY CORPORATION, a foreign corporation; BANK OF AMERICA, N.A., a Delaware corporation; and FIRST AMERICAN TITLE INSURANCE CORPORATION, a California corporation; JOHN AND JANE DOES I-X; BLACK AND WHITE PARTNERSHIP I-X; AND ABC CORPORATION I-X;

Defendants.

Plaintiffs, individually, and on behalf of a class of similarly situated individuals, through undersigned counsel, for Plaintiffs' complaint against Defendants, alleges as follows:

## JURISDICTION

1.      Jurisdiction is founded upon 28 U.S.C. § 1331, as this matter presents issues of federal law, and this court has jurisdiction over the subject matter of this action pursuant to the laws of the United States, including, but not limited to, 15 U.S.C. § 1601, *et seq.;* 12 U.S.C. § 2614, *et seq.;* 15 U.S.C. § 1692 and 15 U.S.C.§ 1640.

2.      This court also has jurisdiction pursuant to 28 U.S.C. § 1332 based on diversity of citizenship, as Plaintiffs are Arizona residents, Defendant WMC Mortgage

- 2 -

Corporation (hereinafter referred to as "WMC Mortgage Corp.") is a California corporation and a subsidiary of GE Money Bank; Defendant GE Money Bank (hereinafter "GE Money") is a Delaware corporation; Defendant Wells Fargo Bank, N.A. dba Wells Fargo Home Equity, Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A., (hereinafter collectively referred to as "Wells Fargo") is a California corporation; Defendant America's Servicing Company (hereinafter referred to as "ASC") is based in Iowa and is a Wells Fargo entity operating under a fictitious name based in Iowa; Defendant MERSCORP, Inc. is a Delaware corporation;  Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a Delaware corporation and a wholly-owned subsidiary of Defendant MERSCORP, Inc.; and Defendants Federal Home Loan Mortgage Corporation, Federal National Mortgage Association, GMAC Mortgage, L.L.C., National City Mortgage, J.P. Morgan Chase Bank, N.A., CitiMortgage, Inc., HSBC Mortgage Corporation, U.S.A., AIG United Guaranty Corporation, and First American Title Insurance Corporation, are foreign corporations, and because this matter is a class action with claims having a value in excess of $5,000,000.00.

3.     This court has pendent jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.     Venue over this matter is appropriate in this court pursuant to 28 U.S.C. § 1391(b).  The acts complained of occurred, in substantial part, in the State of Arizona, the property subject to this action is situated in Arizona, the owners of the property reside in

Arizona, and at all relevant times material hereto, the Defendants are or were doing business in Arizona.

## PARTIES AND STANDING

5.     Plaintiff Jonathan Edward Robinson, formerly Jonathan Edward Hernandez, pursuant to an official name change dated September 25, 2008, is a resident of Pima County, Arizona.

6.     Plaintiff Sally Jane Robinson-Burke, formerly Sally Jane Hernandez, pursuant to an official name change dated September 25, 2008, is a resident of Pima County, Arizona and is the natural mother of Plaintiff Jonathan Robinson. (Plaintiffs Sally Robinson Burke and Jonathan Robison will be collectively referred to herein as "Robinson").

7.     At all times relevant and material hereto, Plaintiffs maintained their primary residence in Pima County, Arizona located at 7095 North Tula Lane, Tucson, Arizona 85743 (hereinafter referred to as the "Residence").

8.     Upon information and belief, Defendant WMC Mortgage Corp. was a California corporation and is the subsidiary of GE Money, a foreign corporation who is authorized to do business in, and doing business in, Pima County, Arizona.

9.     Upon information and belief, Defendant GE Money is a Delaware corporation authorized to do business in, and doing business in, Pima County, Arizona.

10.     Upon information and belief, Defendant Wells Fargo is a California corporation authorized to do business in, and doing business in, Pima County, Arizona.

1    11.    Upon information and belief, ASC is a Wells Fargo entity based in Iowa and

2    operating under a fictitious name. ASC was authorized to do, and doing business in, Pima

3    County, Arizona.

4
     12.    Upon information and belief, Defendant MERSCORP, INC. is a Delaware
5
     corporation doing business in Pima County, Arizona through its subsidiary, Defendant
6
     MERS, Inc., a Delaware corporation.  Upon information and belief, MERSCORP, INC.
7
8    was a director of MERS, Inc.  (Defendants MERSCORP, INC. and MERS, Inc. are

9    hereinafter collectively referred to as "MERS.")

10
     13.    Upon information and belief, Defendant Federal Home Loan Mortgage
11
     Corporation (hereinafter referred to as "Freddie Mac") was a Virginia corporation doing
12
13   business in Arizona, and was a creator, originator and principal shareholder in MERS.

14   Upon information and belief, Freddie Mac has, through its agents and employees, a

15   chartered seat on the MERS board of directors.
16
     14.    Upon information and belief, Defendant Federal National Mortgage
17
18   Association (hereinafter referred to as "Fannie Mae") is a District of Columbia corporation

19   doing business in Arizona, and at all times material hereto, was a creator, originator and

20   principal shareholder of MERS and a member of the MERS system.  Upon information and
21
     belief, Defendant Fannie Mae has, through its agents and employees, a chartered seat on
22
23   the MERS board of directors.

24   15.    Upon information and belief, Defendant GMAC Mortgage, L.L.C. was a

25   Delaware corporation doing business in Arizona, and at all times material hereto, was a

member of the MERS system described herein.   Upon information and belief, Defendant GMAC Mortgage, L.L.C., through its affiliate or subsidiary, GMAC Residential Funding Corporation, was a creator, originator and principal shareholder in MERS and a member of the MERS system.   Defendant GMAC Mortgage, L.L.C. through its employees and/or agents employed by its affiliate or subsidiary, GMAC Residential Holding Corp., has a chartered seat on the MERS board of directors.

16.     Upon information and belief, Defendant National City Mortgage, a division of National City Bank, was a foreign company doing business in Arizona, and at all times material hereto was a member of the MERS system described herein.   Upon information and belief, Defendant National City Mortgage has, through its agents and employees, a chartered seat on the MERS board of directors.

17.     Upon information and belief, Defendant J.P. Morgan Chase Bank, N.A. was a New York corporation doing business in Arizona and, at all times material hereto, was a member in the MERS system described herein.   Upon information and belief, J.P. Morgan Chase Bank, N.A., through its affiliate or subsidiary, Chase Home Mortgage Corporation of the Southeast, was a creator, originator and principal shareholder in MERS, and has through its employees and/or agents employed by its affiliate, J.P. Morgan Chase Co. a chartered seat on the MERS board of directors.

18.     Upon information and belief, Defendant CitiMortgage, Inc. was a New York corporation doing business in Arizona and, at all times material hereto, was a member in the MERS system described herein and a principal shareholder of MERS.

- 6 -

1    19.    Upon information and belief, Defendant HSBC Mortgage Corporation,

2  U.S.A. was a Delaware corporation doing business in Arizona, and at all times material

3  hereto, was a member of the MERS system described herein.  Upon information and belief,

4
   HSBC Mortgage Corporation, through its affiliate or subsidiary HSBC Finance Corp., was
5
6  a creator, originator and principal shareholder of MERS.

7    20.    Upon information and belief, Defendant AIG United Guaranty Corporation

8  was foreign corporation doing business in Arizona and, at all times material hereto, was a

9
   creator, originator and shareholder of MERS and/or a member of the MERS system
10
11 described herein.  Upon information and belief, AIG United Guaranty Corporation has,

12 through its agents and employees, a chartered seat on the MERS board of directors.

13    21.    Upon information and belief, Defendant First American Title Insurance

14 Company was a California corporation doing business in Arizona, and at all times material

15
   hereto, was a creator, originator and principal shareholder in MERS.
16

17    22.    Upon information and belief, Defendant Wells Fargo, at all times material

18 hereto, was a member of the MERS system described herein and a creator, originator and

19 principal shareholder of MERS.

20
      23.    Upon information and belief, Defendant GE Money, at all times material
21
22 hereto, was a member of the MERS system described herein.

23    24.    Upon information and belief, Defendant Countrywide Home Loans, Inc.

24 ("Countrywide") was a New York corporation authorized to do business in and doing

25 business in Pima County, Arizona, and at all times material hereto was a member of the

MERS system described herein and a creator, originator and principal shareholder in MERS.

25.     Defendants John and Jane Does I-X are fictitious names for affiliates, agents, or successors or assigns of the named Defendants whose true names are not known to Plaintiff at this time.  Plaintiff will seek leave of court to amend this complaint to assert the true names of these Defendants at such times as their true names are discovered to assert this complaint against such parties with the same effect as if such names had been set forth herein.

26.     Defendants Black and White Partnership I-X are fictitious names for affiliates, partners, or successors or assigns of Defendants whose true names are not known to Plaintiff at this time.  Plaintiff will seek leave of court to amend this complaint at such times as their true names are discovered to assert this complaint against such parties with the same effect as if such names had been set forth herein.

27.     Defendants ABC Corporation I-X are fictitious names for affiliates, partners, or successors or assigns of Defendants whose true names are not known to Plaintiff at this time.  Plaintiffs will seek leave of court to amend this complaint to assert the true names of these Defendants at such times as their true names are discovered to assert this complaint against such parties with the same effect as if such names had been set forth herein.

## GENERAL ALLEGATIONS

28.     On or about November 14, 2005, Plaintiff Jonathan Robinson obtained financing for the Residence by executing a Promissory Note and Deed of Trust with WMC

1  Mortgage Corp., a California-based mortgage unit of GE Money, as the Lender. The Deed

2  of Trust listed MERS, Inc. as an alleged "nominee" for the Lender and Lender's successors

3
   and assigns.  MERS, Inc., was also listed as the purported beneficiary under the Deed of
4
5  Trust.

6        29.    The loan was in the form of two (2) Promissory Notes totaling $625,000.00,

7  and each secured by a separate Deed of Trust.  The first Promissory Note was in the

8  amount of $500,000.00 (hereinafter "First Note"), and the Second Promissory Note equaled
9
   $125,000.00 (hereinafter "Second Note") (hereinafter the First Note and Second Note shall
10
11 be collectively referred to as the "Notes").  The Defendants represented to Plaintiff

12 Jonathan Robinson that the loan funded one hundred percent (100.0%) of the property's

13 appraised value.

14       30.    Prior to executing the Promissory Notes and the Deeds of Trust, Plaintiff
15
   Jonathan Robinson applied for the loan over the telephone through Andy Dunphy of Ace
16
17 Mortgage Funding, who, upon information and belief, was acting as the agent of

18 Defendants WMC Mortgage Corp. and/or GE Money.

19       31.    Plaintiff Jonathan Robinson did not sign the application at the time it was
20
   filled out by Mr. Dunphy, nor was he provided a copy of the application to review prior to
21
22 it being submitted to WMC Mortgage Corp. and/or GE Money for approval.

23       32.    At the closing of the loan on November 14, 2005, Cathy Kerege of First

24 American Title Company, acting as escrow agent for the parties, represented to Plaintiff

25 Jonathan Robinson that the annual percentage rate on the First and Second Notes would

equal 7.60% and 10.20%, respectively.  Furthermore, Ms. Kerege represented that the monthly payments for the First and Second Note would equal to $3,237.36 and $1,115.48, respectively.

33.    Plaintiff Jonathan Robinson was not required to provide any income verification to demonstrate his ability to repay the loan.  Upon information and belief, Plaintiff Jonathan Robison's credit score and the appraisal of the Residence were the only criteria used by WMC Mortgage Corp. and its affiliates to qualify Plaintiff Jonathan Robinson for the refinance loan that is the subject of this action.

34.    The First Note included an "Adjustable Rate Rider," whereby the initial "teaser" interest rate was set at 1.50% from the Closing Date until December 1, 2007 (hereinafter the "Change Date").  The interest rate would be subject to change on the first Change Date and then on the first day of each successive sixth month period thereafter.

35.    Upon each successive Change Date, the adjusted interest rate was calculated by adding 6.750% to the applicable six-month London Interbank Offered Rate (hereinafter "LIBOR").  Over the term of the loan, the interest rate was limited to a maximum ceiling of 14.10% and a minimum floor of 7.60%.

36.    The First Note contained a prepayment penalty that required six months of advanced interest due at the applicable rate in effect at the time of the prepayment, if a prepayment of principal exceeded twenty percent of the original principal balance of the First Note within the first twenty-four (24) months over the life of the loan.

37.    Plaintiff Jonathan Robinson's initial monthly payment on the First Note was set at $3,237.36 for the first twenty-four (24) months.    Thereafter, that payment was expected to rise to $4,460.86 for six (6) months, then settling at to $4,714.70 where it would remain until maturity on December 1, 2035.    This payment schedule negatively amortized the First Note over the first forty-two (42) months of the life of the loan.

38.    When applying for the loan, Defendants and their agents represented to Plaintiff Jonathan Robinson that he would be able to refinance the Residence at a low rate before the initial "teaser" rate was set to expire.

39.    Plaintiff Jonathan Robinson was led to believe by the Defendants, their agents, representatives and employees, that he was being placed into a loan which he could afford to repay based on his income.    Defendants and their agents, employees and representatives willfully disregarded Plaintiff Jonathan Robinson's income in determining his qualifications for the loan.

40.    Plaintiffs Jonathan Robinson, Sally Robinson-Burke and her husband, John Robinson, took title to the Residence under a Deed of Trust in the form of joint tenants with rights of survivorship.

41.    GE Money, through its subsidiary WMC Mortgage Corp., failed to provide each Plaintiff with the disclosures as required by the Truth-in-Lending Act (hereinafter "TILA").

42.    Plaintiff Sally Robinson-Burke was not provided the required number of copies of the Right to Cancel Notice as required by Regulation Z of TILA.

1        43.    Plaintiff Sally Robinson-Burke and her husband, John Robinson, assisted in

2   making the monthly payments on the Residence.

3        44.    Faced with an exorbitant prepayment penalty, Plaintiffs contacted ASC, the

4   loan servicer, about modifying the First Note in or around October 30, 2007.

5        45.    After receiving no communications from ASC regarding the status of the loan

6   modification application submitted two months prior, Plaintiffs contacted ASC in or around

7   January 2008.  Plaintiffs were informed that because no income verification paperwork was

8   submitted with her application for modification, its approval was delayed.  Thereafter, the

9   Plaintiffs immediately mailed the additional information to ASC as directed.

10       46.    On or around February 6, 2008, Plaintiffs received a Notice of Trustee's Sale

11  scheduling the sale of the Residence for May 23, 2008.  Upon receiving the Notice of

12  Trustee Sale, Plaintiffs immediately contacted ASC to determine the status of the loan

13  modification.  ASC's agent, James Battle, informed Plaintiffs that the loan modification

14  was approved subject to the receipt of additional paperwork from the title company.

15       47.    In or around March 2008, Plaintiffs had still not received confirmation as to

16  whether or not their loan modification application had been approved.      Thereafter,

17  Plaintiffs contacted Mr. Battle at ASC, who again assured Plaintiffs that the modification

18  was underway, but that ASC was still waiting to receive all of the necessary paperwork.

19       48.    In or around April 2008, Plaintiffs received notice that their loan

20  modification application was denied.  Plaintiffs contacted ASC, which put Plaintiffs in

21  direct contact with Wells Fargo Bank.    In order to stop the Trustee's Sale from occurring

as scheduled, Wells Fargo required that Plaintiffs enter into a Forbearance Agreement to permit additional time for Plaintiffs to gather their assets and bring their loan current.

49.    On or around June 1, 2008, the Plaintiffs sent $3,500.00 to ASC as servicer for Wells Fargo Bank, pursuant to the executed Forbearance Agreement, in order to prevent the Residence being sold at trustee's sale.

50.    In or around June 2008, the purported second lender agreed to subordinate to the modified loan on the First Note.   As a result, the Plaintiffs resubmitted the loan modification application on or about August 1, 2008.

51.    On or about August 5, 2008, ASC informed Plaintiffs that the modification on the First Note has been denied.

52.    In approximately October 2008, Plaintiffs promptly exercised their right to rescind the loan within the allowed three-year period as provided by TILA by sending notice to Wells Fargo dba ASC.

53.    ASC, on behalf of Wells Fargo, denied the demand for rescission, contending that Wells Fargo was merely the loan servicer, not the originator, and therefore had no authority to rescind the loan.

54.    ASC, on behalf of Wells Fargo, has currently scheduled a trustee sale of the Residence for May 1, 2009.

**FIRST CLAIM FOR RELIEF**
**(Violation of the Truth in Lending Act,**
**15 U.S.C. § 1601, *et seq*. and Regulation Z, 12 C.F.R. § 201, *et. seq*.)**
**(As to Defendants GE Money, WMC Mortgage Corp. and Wells Fargo)**

1    55.    Plaintiffs incorporate each and every paragraph of this Complaint as if fully

2   set out in this claim.

3    56.    As defined in 15 U.S.C.A. § 1602 and 12 C.F.R. § 226.2, the transaction

4
    between Plaintiff Jonathan Robinson and Defendant WMC Mortgage Corp. was a "credit
5
    sale."
6
     57.    As defined in 15 U.S.C. § 1602, Plaintiff Jonathan Robinson was a
7
    "consumer," and Defendant WMC Mortgage Corp. was a "creditor."
8
9    58.    Pursuant to 15 U.S.C.A. § 1638(b)(1) and 12 C.F.R. § 226.17, Defendant

10   WMC Mortgage Corp. was required to make certain specified disclosures to Plaintiff
11
    Jonathan Robinson before the consummation of the credit transaction.
12
     59.    Pursuant to 12 C.F.R. § 226.23, Defendant WMC Mortgage Corp. was
13
14   required to furnish each individual holding an interest in the Residence with two (2)

15   completed copies of the Right to Cancel notice.
16
17    60.    Upon information and belief, Defendant WMC Mortgage Corp. violated 15

18   U.S.C. § 1638 by improperly and/or inadequately disclosing one or more of the following
19
    items to Plaintiffs:
20
21         a.    The annual percentage rate;

22         b.    The finance charge;

23         c.    The amount financed;

24
           d.    The total number of payments;
25
           e.    The payment schedule;

- 14 -

f.      Whether the loan has a demand feature;

g.      Whether the loan has a variable rate feature, and if so, to make disclosure about the variable rate feature;

h.      Whether the borrower may be entitled to a refund of a portion of the finance charges;

i.      Whether the loan is subject to a prepayment penalty, and if so, to make disclosure about the prepayment penalty terms.

61.     Upon information and belief, fees were charged to Plaintiff Jonathan Robinson by Defendant WMC Mortgage Corp., without being properly disclosed pursuant to 15 U.S.C. § 1605 and Regulation Z of Section 226.4.

62.     Upon information and belief, with regards to the loans obtained by Plaintiff Jonathan Robinson, Defendant WMC Mortgage Corp. applied the annual percentage rate based on improperly calculated and disclosed amounts and in direct violation of 15 U.S.C. § 1601, *et seq.* and Regulation Z Sections 226.18(c), 18(d), and 22.

63.     Pursuant to the Truth-in-Lending Act, borrowers must be provided with notice of their right to rescind the transaction at the time of closing. Upon information and belief, Defendant WMC Mortgage Corp., through its agents and affiliates, failed to furnish Plaintiffs with the proper number of Right to Cancel notices pursuant to 15 U.S.C. § 1635 and 12 C.F.R. § 226.23.

64.     Upon information and belief, Plaintiff Sally Robinson-Burke was not given the requisite two (2) copies of the Right to Cancel notice.

65.     Pursuant to 15 U.S.C.A. § 163(b) and 12 C.F.R. § 226.3, Defendant Wells Fargo Bank dba ASC wrongfully denied Plaintiffs' rescission of the transaction during the three-year allowed time period.

66.     As a result of Defendant's violations as set forth herein, Plaintiffs are entitled to damages as set forth below.

67.     Upon information and belief, Defendant WMC Mortgage Corp., through its agents and affiliates, fraudulently misrepresented and concealed the true facts related to the items subject to disclosure to Plaintiff Jonathan Robinson, and Plaintiff Jonathan Robinson did not discover the Defendant's failure to make such disclosures pursuant to 15 U.S.C. § 1638 until one (1) year within the filing of this Complaint.

**SECOND CLAIM FOR RELIEF**
**(Violation of Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.*)**
**(As to Defendants GE Money, WMC Mortgage Corp. and Wells Fargo)**

68.     Plaintiffs incorporate each and every paragraph of this Complaint as if fully set out in this claim.

69.     Defendant GE Money, through its agent WMC Mortgage Corp., is a "mortgage lender" with deposits or accounts insured by a federal agency and/or a lender that is regulated by the federal government, and therefore is subject to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*

70.     The loan to Plaintiff Jonathan Robinson described herein is a federally related mortgage loan subject to 12 U.S.C. § 2601, *et seq.*

71.    Plaintiff Jonathan Robinson is a consumer and a member of the class of consumers subject to protection under 12 U.S.C. § 2601, *et seq.*

72.    Pursuant to 12 U.S.C. § 2601, *et seq.*, Defendant WMC Mortgage Corp. was required to provide Plaintiff Jonathan Robinson with a uniform settlement statement, which must clearly and conspicuously itemize all charges imposed upon the borrower and all charges imposed upon the seller in connection with the closing of the loan.

73.    Pursuant to 12 U.S.C. § 2604, Defendant WMC Mortgage Corp. was also required to provide Plaintiff Jonathan Robinson with a special information booklet, which was to contain in "clear and concise language" a description and/or explanation of the following:

    a.    Each cost associated with a real estate settlement;

    b.    The uniform settlement form required by RESPA (with a sample copy of the form);

    c.    The nature and purpose of escrow accounts used in connection with real estate transactions;

    d.    The choices available to residential real estate purchasers when they require necessary services incident to a real estate transaction;

    e.    Unfair practices and unreasonable or unnecessary charges that a prospective purchaser should avoid in connection with a real estate settlement.

74.    Pursuant to 12 U.S.C. § 2604, Defendant WMC Mortgage Corp. was required to include a "good faith estimate of the amount or range of charges" for settlement services with the special information booklet described above.

75.    Pursuant to 12 U.S.C. § 2604, Defendant WMC Mortgage Corp. was required to provide Plaintiff Jonathan Robinson a good faith estimate and the special information booklet no later than three (3) business days after Defendant WMC Mortgage Corp. received the loan application described herein.

76.    Defendant WMC Mortgage Corp. was required to inform Plaintiff Jonathan Robinson at the time of application, whether the servicing of the loan could be assigned, sold, or transferred during the life of the loan.

77.    Defendants WMC Mortgage Corp. and ASC were required to notify Plaintiff of the assignment, sale, or transfer of the loan in writing at least fifteen (15) days before the event or at the time of settlement.

78.    Pursuant to 12 U.S.C. § 2607(a), Defendant WMC Mortgage Corp. was prohibited from paying any "fee, kickback, or thing of value" to any person as part of the real estate settlement service involving the loan described herein.

79.    Defendant WMC was required to disclose any "controlled business arrangements" as defined in 12 U.S.C. § 2602 to Plaintiffs.

80.    Upon information and belief, Defendant WMC Mortgage Corp. violated RESPA by failing to provide Plaintiff Jonathan Robinson with the required disclosures described above within the required time periods provided for by the Act.    Upon

information and belief Defendant WMC Mortgage Corp., through its agents and affiliates provided Plaintiff Jonathan Robinson with inaccurate settlement statements and good faith estimates prior to the closing of the transaction.

81.     Upon information and belief, Defendant WMC Mortgage Corp. violated the RESPA by failing to disclose a "controlled business arrangements" to Plaintiff Jonathan Robinson.

82.     Upon information and belief, Defendant WMC Mortgage Corp. violated the RESPA by charging Plaintiff Jonathan Robinson unreasonably high fees for real estate settlement services.

83.     Upon information and belief, Defendant WMC Mortgage Corp fraudulently misrepresented and concealed from Plaintiff Jonathan Robinson the true facts related to the items subject to disclosure, and Plaintiff Jonathan Robinson did not discover Defendant's failure to make the required disclosures pursuant to 12 U.S.C. §§ 2601 and 2604 within one (1) year of the filing of this Complaint.

84.     Based on Defendant's violations as described herein, Plaintiff is entitled to damages under 12 U.S.C. §§ 2607 and 2608, and to claim damages for emotional distress according to proof.

85.     Based on Defendant's violations as described herein, Defendant WMC Mortgage Corp. is liable to Plaintiff in an amount equal to three (3) times the amount of charges paid by Plaintiffs for "settlement services."

1

2

3

### THIRD CLAIM FOR RELIEF
#### (Violation of Home Ownership and
#### Equity Protection Act, 15 U.S.C. §§ 1602(aa), 1610, and 1639)
#### (As to Defendants GE Money, WMC Mortgage Corp. and Wells Fargo)

4

5

86.    Plaintiffs incorporate each and every paragraph of this Complaint as if fully set out in this claim.

6

7

8

9

87.    In 1994, Congress enacted the Home Ownership Equity Protection Act (hereinafter "HOEPA") as codified in 15 U.S.C. § 1639 et seq. with the intention of protecting homeowners from predatory lending practices targeting vulnerable consumers.

10

11

12

13

HOEPA requires lenders to make certain defined disclosures and prohibits certain terms from being included in home loans.  In the event of noncompliance, HOEPA imposes civil liability for rescission plus statutory and actual damages.

14

15

16

17

18

88.    As defined in 15 U.S.C.A. § 1602(aa), the transaction between Plaintiff Jonathan Robinson and Defendant GE Money through its subsidiary WMC Mortgage Corp. was a "mortgage."  Plaintiff was a "consumer," and Defendant GE Money, through its subsidiary WMC Mortgage Corp., was a "creditor."

19

20

21

89.    Pursuant to 15 U.S.C.A. § 1639, Defendant GE Money through its subsidiary WMC Mortgage Corp. was required to make certain specified disclosures as listed below "not less than three (3) business days prior to the consummation of the transaction."

22

23

24

25

90.    Defendant GE Money through it subsidiary WMC Mortgage Corp., violated HOEPA by numerous acts, material omissions, and a pattern of fraudulent concealment, including but not limited to the violation 15 U.S.C. § 1639 and by improperly, inadequately, or failing to disclose one or more of the following items:

a.      The specific disclosure, in a "conspicuous type size," that "*You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application*;"

b.      The specific disclosures, in a "conspicuous type size," that "*If you obtain this loan, the lender will have a mortgage on your home.  You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan*;"

c.      The annual percentage rate;

d.      The amount of the regular monthly payment if the interest rate was a fixed rate; or

e.      The annual percentage rate of the loan, the amount of the regular monthly payment, statement that the interest rate and monthly payment may increase, the amount of the maximum monthly payment if the transaction was other than a fixed interest rate transaction; and the amount financed.

91.     Defendant GE Money, through its subsidiary WMC Mortgage Corp. violated 15 U.S.C. § 1639 by making a loan to Plaintiff that included one or more of the following terms:

a.      A non-exempt prepayment penalty that was not within the exception contained in 15 U.S.C. § 139 (c)(2)(A)-(D);

b.      A "balloon payment" as defined in 15 U.S.C. 1639(e), which was due on a loan that had a term of less than five (5) years;

1

c.     Negative amortization as defined in 15 U.S.C. § 1639(f).

2

92.    Defendant GE Money through its subsidiary WMC Mortgage Corp. violated

3

4

HOEPA by engaging in a pattern or practice of extending credit to Plaintiffs and other

5

similarly situated individuals without regard to their ability to repay in violation of 15

6

U.S.C. §1639(h).

7

93.    The initial monthly payment on the mortgage was $4,442.84 for twenty-four

8

(24) months, equaling approximately 443.0% percent of Plaintiff's monthly income.

9

94.    With respect to Plaintiff Jonathan Robinson, Defendant WMC Mortgage

10

11

Corp. made a loan regulated by 15 U.S.C. §§ 1602(aa) and 1639 without making the

12

disclosures as set forth in paragraph 90(a) and 90(b) above.

13

95.    Additionally, the First Note included provisions for prepayment penalties and

14

the payments under the First Note resulted in negative amortization.

15

96.    Upon information and belief, Wells Fargo, as assignee or purchaser of the

16

17

loan, is subject to liabilities arising out of WMC Mortgage Corp.'s violation of the

18

disclosure requirements of HOEPA.

19

97.    As a result of Defendants' violations as set forth herein, Plaintiff is entitled to

20

damages as set forth below, including, but not limited to statutory damages pursuant to 15

21

U.S.C. § 1640.

22

23

98.    Upon information and belief, Defendants GE Money and WMC Mortgage

24

Corp., through their agent(s), fraudulently misrepresented and concealed the true facts

25

related to the items subject to disclosure to Plaintiff, and Plaintiff discovered the

1   Defendants' failure to make the disclosures pursuant to 15 U.S.C.A. § 1639 within one (1)

2   year of the filing of this Complaint.

3

4                          **FOURTH CLAIM FOR RELIEF**
                    **(Violation of the Fair Debt Collection Practices Act,**
5                              **15 U.S.C. § 1692, _et. seq._)**
6   **(As to Defendant Wells Fargo, America's Servicing Company, and First American**
                            **Title Insurance Company)**
7
8        99.    Plaintiffs incorporate each and every paragraph of this Complaint as if fully

9   set out in this claim.

10       100.   The making of a loan, such as the loan made to Plaintiff and referred to

11  herein, is a "real estate related transaction" subject to the Federal Fair Housing Act.

12
         101.   At all times material hereto, Plaintiff Jonathan Robinson was a "consumer"
13
14  as defined in 15 U.S.C. § 1692(a)(3), as Plaintiff was obligated pursuant to the loan

15  transaction described herein to pay a debt to Defendant under the Note and Deed of Trust

16  described herein.

17
         102.   Defendant Wells Fargo was a "debt collector" as defined in 15 U.S.C. §
18
19  1692(a)(6), as Defendant utilized the name of ASC, which was a name other than its own,

20  and was a third party who was attempting to collect a debt on behalf of Defendant Wells

21  Fargo.  ASC was an affiliate of Defendant Wells Fargo.

22
         103.   On or about December 3, 2008, Defendant Wells Fargo, operating as ASC,
23
    issued a Notice of Trustee's Sale.  Upon information and belief, Defendant Wells Fargo
24
25  was not the holder of the note, and the note had not been assigned.

- 23 -

1        104.   Upon information and belief, Defendant Wells Fargo, operating as ASC,

2   improperly issued the Notice of Trustee's Sale, thereby violating 15 U.S.C. 1692(f)(6),

3   which prohibits taking or threatening to take non-judicial action to effect dispossession of

4   property if there is no present right to possession of the property claimed as collateral

5   through an enforceable security interest.

6        105.   Defendants, and each of them, used false, deceptive and misleading

7   representations to Plaintiff by failing to disclose any transfers in connection with the Note,

8   in violation of 15 U.S.C. 1692(f).

9        106.   Upon information and belief, Defendants sent false, deceptive and misleading

10  correspondence and coupons to Plaintiffs that misstated the amount of the payments owed

11  and the monetary amount needed to bring the mortgage current.

12       107.   Upon information and belief, Defendants knowingly misrepresented to

13  Plaintiffs that Plaintiffs would be offered a loan modification opportunity tailored to fit

14  their unique financial situation and permit them to stay in their Residence.

15       108.   Defendant Wells Fargo, operating as ASC, improperly published that

16  Plaintiff's property was in foreclosure and that Defendant Wells Fargo was a proper party

17  to initiate foreclosure.

18       109.   Defendants' violation of the Federal Debt Collection Practices Act as alleged

19  herein has caused Plaintiffs to suffer damages, including, but not limited to, financial

20  losses, damage to reputation, embarrassment, humiliation, and emotional distress, and

21  Plaintiffs have incurred attorneys' fees and costs in this matter.

1      110.   Defendants' violation of the Federal Debt Collection Practices Act alleged

2 herein was reckless, willful and wanton, entitling Plaintiffs to actual and statutory damages.

**FIFTH CLAIM FOR RELIEF**
**(Violation of the Arizona Consumer Fraud Act, A.R.S. §§ 44-1521, *et seq.*)**
**(As to Defendants GE Money, WMC Mortgage Corp.)**

     111.   Plaintiffs incorporate each and every paragraph of this Complaint as if fully set out in this claim.

     112.   A.R.S. § 44-1522 prohibits the use of any "deceptive act or practice" in connection with real estate transactions.

     113.   A.R.S. § 44-1522(B) permits interpretations of 15 U.S.C.A. §§ 44, 52, and 55(a)(1), the Federal Trade Commission Act, to be used as a guide in interpreting the term "deceptive." Interpretations of the term include representations that have a "tendency and capacity" to convey misleading impressions to consumers even though interpretations that would not be misleading are also possible. *Chrysler Corp. v. FTC*, 561 F.2d 357, 363 (D.C.Cir. 1977). In evaluating the representations, the test is whether the least sophisticated individual would be misled. *Exposition Press, Inc. v. FTC*, 295 F.2d 869, (2d Cir. 1961), *cert. denied* 370 U.S. 917, 82 S.Ct. 1544 (1962).

     114.   Upon information and belief, Defendant WMC Mortgage Corp. used deception, false promises, and misrepresentations regarding the terms of the loan offered to Plaintiff by misrepresenting, concealing, or omitting the terms of the loan, including, but not limited to, the interest rate, the payments to be made under the loan, Plaintiff's ability to qualify for the loan, and Plaintiff's ability to refinance the loan in the future. Such facts

were material in that Defendants knew, or should have known, that Plaintiff would rely upon Defendant's representations in entering into the loan as alleged herein.

115.   Upon information and belief, Defendant WMC Mortgage Corp. made a loan to Plaintiff Jonathan Robinson without making a commercially reasonable determination of Plaintiff's ability to repay the loan.   Upon information and belief, Defendant knew, or should have known, that Plaintiff would be incapable of making loan payments as required by the terms of the loan based upon Plaintiff's income.

116.   Defendant WMC omitted and concealed the magnitude of Plaintiff's risk of losing the home.

117.   Plaintiff Jonathan Robinson relied upon Defendant WMC Mortgage Corp.'s representations concerning the terms of the loan his ability to repay the loan when entering the loan agreement.

118.   WMC Mortgage Corp.'s deceptive practices misled Plaintiff into believing that he would be able to refinance the loan before the initial "teaser" rate was set to expire.

119.   Plaintiffs learned of Defendants' violations of A.R.S. § 44-1522 within one (1) year of filing this complaint.

120.   As a proximate result of the violations stated above, Defendants are liable to Plaintiffs for statutory damages according to the Arizona Consumer Fraud Act, for actual damages (including emotional distress) according to proof, and attorneys' fees and costs.

121.   Moreover, the conduct of Defendants in violation of the Arizona Consumer Fraud Act was so contemptible and egregious that Plaintiffs are entitled to punitive

1    damages in an amount appropriate to punish Defendants and deter others from engaging in

2    similar conduct.

### SIXTH CLAIM FOR RELIEF
**(Conspiracy to Commit Fraud and Conversion)**
**(As to Defendants WMC Mortgage Corporation GE Money, Wells Fargo, and MERS)**

122.    Plaintiffs incorporate each and every paragraph of this Complaint as if fully set out in this claim.

123.    In connection with the application and consummation of the loans that are the subject of this action, Defendants WMC Mortgage Corp., GE Money, Wells Fargo, ASC and MERS conspired and formed an association designed to deprive Plaintiffs of their property through fraud and misrepresentation which would result in Plaintiff entering a loan for which Plaintiff was not qualified.

124.    Upon information and belief, Defendants intended that the loan would be packaged and sold on the secondary market, resulting in a substantial profit to the Defendants.

125.    Defendants knew prior to their origination and subsequent transfer of the loan, that Plaintiff Jonathan Robinson was not qualified for the loan.    Furthermore, Defendants knew, or should have known, that Plaintiff would rely, and did rely, on Defendants' representations as alleged herein related to Plaintiff's ability to repay the loan or to refinance the loan.

126.    Defendants' legal objective of packaging and selling the loan was accomplished by illegal means in procuring the loan because of Defendants' violation of

the Truth in Lending Act, the Real Estate Settlement Procedures Act, the Home Ownership and Equity Protection Act, and the Arizona Consumer Fraud Act as alleged herein.

127.   Upon information and belief, as an alternative to packaging and selling Plaintiff Jonathan Robinson's loan, Defendants knew that the loan would be subject to foreclosure as a result of Plaintiffs' inability to make payments on the Notes as the monthly payment escalated during the term of the loan resulting in Plaintiff Jonathan Robinson's inability to qualify for a refinance the loan at a later date after the payments began to escalate because of changes in the interest rate.

128.   Upon information and belief, Defendants knew that they would be unable to modify Plaintiffs' loan into a payment plan Plaintiffs could afford.

129.   Defendants intended that Plaintiff Jonathan Robinson would default on the loan, and Defendants would be in a position of seizing the Residence in a foreclosure action, depriving Plaintiffs of their Residence.

130.   Defendants, and each of them, in furtherance of the conspiracy and agreement alleged herein, acted in a concerted manner to target Plaintiff Jonathan Robinson as a borrower, to misrepresent the loan terms and/or to misrepresent Plaintiff's qualification for the loan, and to mislead Plaintiffs into relying on the potential of an affordable loan modification that would never manifest, knowing that such action or actions would result in Defendant's ultimate possession of the Residence following foreclosure.

131.   The actions of the various Defendants were interrelated and could not have been accomplished without the participation of all of the Defendants.  The actions of all of

1   the Defendants were committed intentionally, willfully, wantonly and with reckless

2   disregard for the rights of Plaintiff.

3
        132.    As a result of Defendants' conspiracy described herein, Plaintiffs have
4
5   suffered injuries which include mental anguish, emotional distress, embarrassment,

6   humiliation, loss of reputation and a decreased credit rating which has, or will, impair

7   Plaintiffs' ability to obtain credit at a favorable rates before the decrease in their credit

8   rating, the loss or anticipated loss of the Residence, and other financial losses according to
9
    proof.  Plaintiffs have incurred attorneys' fees and costs in this matter.
10
        133.    Defendants' conspiracy to unlawfully deceive Plaintiffs into the loan alleged
11
12  herein was willful, wanton, and justify an award of actual, compensatory and punitive

13  damages.

14
                         **SEVENTH CLAIM FOR RELIEF**
15                  **(Conspiracy To Commit Fraud Related To MERS System)**
                **(As to Defendants MERS, Freddie Mac, Fannie Mae, GMAC Mortgage,**
16  **L.L.C., National City Mortgage, J.P. Morgan Chase Bank, N.A.,**
    **CitiMortgage, Inc., Countrywide Home Loans, Inc., HSBC Mortgage**
17  **Corporation, U.S.A., Wells Fargo Bank, N.A., First American Title Insurance**
    **Corporation, GE Money Bank, and AIG United Guaranty Corporation only)**
18
19      134.    Plaintiffs incorporate each and every paragraph of this Complaint as if fully

20  set out in this claim.

21
        135.    Upon information and belief, Defendants MERS, Freddie Mac, Fannie Mae,
22
23  GMAC Mortgage, L.L.C., J.P. Morgan Chase Bank, N.A., CitiMortgage, Inc., Countrywide

24  Home Loans, Inc., HSBC Mortgage Corporation, Wells Fargo Bank, N.A., First American

25  Title Insurance Corporation, GE Money Bank, and AIG United Guaranty Corporation

    (hereinafter in this Seventh Claim for Relief collectively referred to for purposes of this

Seventh Claim as "Defendant Conspirators"), and each of them, did knowingly and willfully conspire and agree among themselves to engage in a conspiracy to promote, encourage, facilitate and actively engage in fraudulent and predatory lending practices perpetrated on Plaintiffs as alleged herein as part of the business policies and practices of each of the Defendant Conspirators by their participation in the MERS system.

136.   Upon information and belief, Defendant Conspirators, and each of them, are or have been creators, originators and controlling shareholders in MERS and/or members of the MERS system, and, as to Defendant Conspirators, Freddie Mac, Fannie Mae, GMAC Mortgage, L.L.C., National City Mortgage, and J.P. Morgan Chase Bank, N.A., have, through their employees and agents, a chartered seat on the Board of Directors of MERS, and have participated in the design and coordination of the MERS system.

137.   Upon information and belief, Defendant Conspirators have conspired among themselves and with other unknown parties to:

a.   Develop a system of earning profits from the origination and securitization of residential loans without regard to the rights of Plaintiffs, and others similarly situated, by engaging in predatory and deceptive residential lending practices as alleged in this complaint above;

b.   In furtherance of the system referred to immediately above, Defendant Conspirators intentionally created, managed, operated, and controlled Defendant MERS for the specific purpose of MERS being designated as a sham "beneficiary" in the original

deeds of trust securing those loans, including the loan made to Plaintiffs and other similarly situated individuals;

        c.      Defendant Conspirators, and each and every one of them, intentionally created, managed, operated and controlled the MERS system with the unlawful intent and for the unlawful purpose of making it difficult or impossible for Plaintiffs and other victims of such industry-wide predatory policies and practices to identify and hold responsible the persons and/or entities responsible for the unlawful actions of Defendants WMC Mortgage Corp., GE Money, MERS and their co-conspirators;

        138.    Upon information and belief, Defendant Conspirators, through creation of the MERS system alleged herein, adopted and implemented a system of residential lending underwriting guidelines for use in Arizona which was designed to, and did, generate unprecedented profits for Defendant Conspirators and their co-conspirators, corporate Officers and Directors, at the expense of Plaintiffs and other similarly situated persons that Defendant Conspirators fraudulently induced into taking out residential loans on which Defendant Conspirators and their co-conspirators knew that Plaintiffs and others like them would likely default, and which would likely result in foreclosure. Defendant Conspirators issued these loans with reckless disregard and with intentional indifference of the likelihood of such foreclosure.

        139.    Upon information and belief, the MERS system was created to unlawfully hide and insulate predatory loan brokers and originators from accountability and liability by

informing all lenders who originated loans naming MERS as the beneficiary of the following:

      a.    MERS would never own or acquire any actual beneficial interest in any loan in which it was named as beneficiary under the deed of trust, and that

      b.    MERS could be named as beneficiary for purposes of public notice and notice to the borrower and would act in that capacity if so designated by the lender who originated the loan.

      140.    Upon information and belief, Defendant Conspirators and their co-conspirators' intent and purpose in the creation, management, operation and control of MERS was, without limitation, to make it impossible for anyone, other than Defendant Conspirators who created and controlled MERS, to identify the actual beneficial owner of any loan or the property used as collateral to secure the loan until such time, if any, that a foreclosure action was initiated.    As a result, the identity of the actual beneficial owner was intentionally hidden from Plaintiffs and other similarly situated individuals.

      141.    Upon information and belief, the creation of the MERS system by the Defendant Conspirators, was dependent on fraudulent and deceptive practices that included, but were not limited to, making loans to consumers such as Plaintiffs in violation of the Truth in Lending Act, the Real Estate Settlement Procedures Act, the Home Ownership and Equity Protection Act, and created a system to unlawfully deprive Plaintiffs of Plaintiffs' interest in the Residence.

142.   As a result of the actions of Defendant Conspirators as described herein, Plaintiffs have suffered injuries which include mental anguish, emotional distress, embarrassment, humiliation, loss of reputation and a decreased credit rating that has, and will, impair Plaintiff's ability to obtain credit at favorable terms, the loss or anticipated loss of Plaintiff's Residence, and other financial losses according to proof. Plaintiffs have incurred attorneys' fees and costs in this matter.

143.   Defendant Conspirators' actions were wanton, willful and reckless, and justify an award of punitive damages against Defendant Conspirators, and each of them.

## EIGHTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)
### (As to Defendants GE Money, WMC Mortgage Corp., Wells Fargo and MERS)

144.   Plaintiffs incorporate each and every paragraph of this Complaint as if fully set out in this claim.

145.   Defendant WMC Mortgage Corp.'s actions in targeting Plaintiff Jonathan Robinson for a loan, misrepresenting the terms and conditions of the loan, negotiating the loan, and closing the loan as alleged herein were intentional, reckless, wanton and willful.

146.   Defendants actions as alleged herein were extreme and outrageous because of the Plaintiffs vulnerability to the predatory lending practices described herein and because the subject of the loan was Plaintiffs' primary residence, inherent with the characteristics of providing shelter for Plaintiffs and a sense of pride and emotional security.

147.   As a result of Defendants' actions alleged herein, Plaintiffs have suffered financial loss, endured the stress inherent in facing the loss of their Residence, and suffer

embarrassment and humiliation that results from Plaintiffs being put in the position of defaulting on the loan.   All of these factors have culminated to invade Plaintiffs' mental and emotional tranquility and to cause Plaintiffs severe emotional distress.

148.   Because of the extreme and outrageous nature of Defendants' actions as alleged herein, and to deter such conduct in the future, Plaintiffs are entitled to an award of punitive damages and such other relief as set forth below.

### NINTH CLAIM FOR RELIEF
**(Injunctive Relief)**
**(As to Defendant Wells Fargo, MERS, ASC and**
**First American Title Insurance Company)**

149.   Plaintiffs incorporate each and every paragraph of this Complaint as if fully set out in this claim.

150.   Plaintiffs are faced with the clear and present danger of losing their Residence due to threatened foreclosure action at a trustee's sale as alleged herein.

151.   Neither Defendants ASC nor MERS, Inc. nor any purported assignee of MERS, Inc., is the proper beneficiary under the Notes and Deed of Trust, and neither is a proper party to institute a foreclosure action or a trustee's sale.

152.   Furthermore, Defendant First American Title Company failed to properly record its interest with the County Recorder for Pima County prior to noticing two trustee's sales of the Residence, the second of which is presently pending and scheduled for May 1, 2009.  A.R.S. § 33-804 mandates that a Notice of Substitution of Trustee be recorded in "each county in which the trust property or some part of the trust property is situated **at the time of the substitution**." A.R.S. §33-804 (C) [Emphasis added].   The Notice of

1   Substitution of Trustee appointing First American Title Company was not filed in the Pima

2   County Recorder's office until January 28, 2009, almost a month after the pending Notice

3   of Trustee's Sale was filed on December 31, 2008.  Therefore, it logically follows that First

4   American Title recorded the impending Notice of Trustee's prematurely, and therefore the

5   Notice of Trustee Sale is ultimately invalid.

6

7          153.   Plaintiffs will suffer irreparable harm if Defendants are not enjoined from

8   selling Plaintiffs' Residence at a foreclosure or trustee's sale, as Plaintiffs will lose

9   Plaintiffs' financial interest in the Residence, and Plaintiffs will have no adequate remedy

10  at law, because the Residence is unique.

11

12         154.   Defendants will not suffer irreparable harm if the foreclosure sale or

13  trustee's sale is enjoined.

14         155.   Plaintiffs are entitled to a temporary restraining order and a preliminary

15  injunction prohibiting Defendants, their agents, employees or servants from selling

16  Plaintiffs' Residence at a foreclosure sale or trustee's sale as described herein.

17

18         156.   Plaintiffs have been required to retain counsel in this matter to protect

19  Plaintiffs' rights and have incurred attorneys' fees and costs in this matter.

20                      **TENTH CLAIM FOR RELIEF**
                             **(Declaratory Relief)**
21              **(As to Defendants Wells Fargo, MERS, ASC and**
                    **First American Title Insurance Company)**
22

23         157.   Plaintiffs incorporate each and every paragraph of this Complaint as if fully

24  set out in this claim.

25

158.   Plaintiffs seek a declaratory judgment against Defendants stating that Defendants violated Plaintiffs' rights under the Truth in Lending Act, the Real Estate Settlement Procedures Act, the Home Ownership and Equity Protection Act, the Fair Debt Collection Practices Act, and the Arizona Consumer Fraud Act.

159.   Plaintiffs have been required to retain counsel in this matter to protect Plaintiffs' rights and have incurred attorneys' fees and costs in this matter.

## CLASS ACTION ALLEGATIONS AND
## REQUEST FOR CLASS CERTIFICATION

160.   Plaintiffs incorporate each and every paragraph of this Complaint as if fully set out in this claim.

## Class Definition

161.   Plaintiffs, pursuant to Fed. R. Civ. P. 23(a), (b)(2-3), bring this action on behalf of a class of similarly situated individuals who obtained loans allegedly secured by residential real property located in the State of Arizona and whose loans were insured, securitized, guaranteed or funded by the Defendants, and where MERS and/or the MERS system was involved in any way with those loans, including the insurance, securitization, guarantee or transfer of a purported security and/or beneficial interest in such loans between January 2005 and the present. Excluded from the class are the Defendants, including any parent, subsidiary, affiliate or controlled person of the Defendants and their officers, directors, agents or employees, any judge or judicial officer assigned to this matter, and members of the immediate families of any excluded persons.

1

**Numerosity**

2

162. Upon information and belief, the class comprises not less than 125 individual

3

members, and the membership in the class is so numerous that joinder of all members is

4

5

impracticable.  The members of the class can be identified and located using information

6

contained in the Defendants' mortgage lending records.

7

**Common Questions of Law and/or Fact**

8

163.   There are common questions of law and/or fact common to the class,

9

including whether the Defendant GE Money through its subsidiary WMC Mortgage Corp.

10

11

violated the Truth in Lending Act, the Home Ownership, Real Estate Settlement and

12

Procedures Act, and Equity Protection Act, the Federal Fair Housing Act, as alleged herein,

13

and whether any such violations constituted a conspiracy to commit fraud or conversion

14

and/or whether Defendant's conduct constitutes intentional infliction of emotional distress

15

on the class members.  Also common to the class is the issue of whether the named

16

17

Defendants acted as conspirators in committing fraud in the creation and origination of the

18

MERS system as alleged herein.

19

**Typicality**

20

164.   Plaintiffs' claims are typical of those of the members of the class.  Plaintiffs

21

and the class members were subjected to the same kind of unlawful conduct and the claims

22

23

of Plaintiffs and the class members are based on the same legal theories.

24

25

1

### Fair and Adequate Representation of Class

2

165.   Plaintiffs will fairly and adequately protect the interests of the class Plaintiffs

3

4

represent.  Plaintiffs' interests do not conflict with the interests of the class, and Plaintiffs

5

intend on prosecuting this action vigorously.

6

166.   Plaintiffs have retained experienced counsel qualified in class action

7

litigation, and counsel is competent to assert the interests of the class.

8

9

### Rule 23(b) Requirements

10

167.   The unlawful acts of Defendants, as alleged herein, constitute a course of

11

12

conduct common to Plaintiffs and each class member.  Prosecution of separate actions by

13

individual class members would create a risk of inconsistent or varying adjudications,

14

which would establish incompatible standards of conduct for Defendants and/or

15

16

substantially impair or impede the ability of the individual class members to protect their

17

interests.

18

168.   Injunctive and/or declaratory relief to the class is appropriate because, upon

19

information and belief, Defendants, and each of them, have acted or refused to act on

20

grounds generally applicable to the class.

21

169.   Questions of law and/or fact common to the class members, including the

22

23

issues identified above, predominate over questions affecting only individual class

24

members, and a class action is superior to other available methods for fair and efficient

25

adjudication of the controversy.  Class action treatment will allow a large number of

similarly situated individuals to simultaneously pursue their common claims in a single forum in an efficient manner, without unnecessary duplication of effort and expense that would be required if numerous individual actions were pursued.

**WHEREFORE**, Plaintiffs pray this court enter an order providing relief as follows:

1.   For award of damages against Defendants and each of them on Plaintiffs' claims as applicable under federal law as alleged above in an amount to be shown at trial;

2.   For an award of damages against Defendants, and each of them, on the Plaintiffs' state law claims, whether general, special or punitive as alleged above, in an amount to be shown at trial;

3.   For an award of attorneys' fees and costs as provided by law;

4.   For a temporary restraining order and preliminary and permanent injunction prohibiting Defendants, their agents, servants and employees as specifically alleged above from selling Plaintiffs' property at foreclosure and from proceeding with any foreclosure or collection action against the Plaintiffs;

5.   For a temporary restraining order and preliminary and permanent injunction prohibiting Defendants, their agents, servants and employees as specifically alleged above from transferring or accepting the transfer of any beneficial interest in, or rights to act as Trustee under, any Deed of Trust which identified MERS as the "beneficiary" on any residential property located within the State of Arizona;

6.   For a temporary restraining order and preliminary and permanent injunction prohibiting Defendants, their agents, servants and employees as specifically alleged above

from proceeding with any action to foreclose, to sell at a foreclosure or trustee's sale, or in any other way to interfere with class members' peaceful use and possession of any residential property located in Arizona that was the subject of a Deed of Trust which identified MERS as the "beneficiary;"

7.    For a temporary restraining order and preliminary and permanent injunction prohibiting Defendants, their agents, servants and employees as specifically alleged above from transferring any interest in any residential property in Arizona in which Defendants acquired and/or hold title in the name of MERS or a MERS member, and in which MERS had purported to transfer beneficial interest under a Deed of Trust prior to a foreclosure or trustee's sale;

8.    For a declaratory judgment holding that Plaintiffs' rights were violated as alleged above;

9.    That Plaintiffs have and recover from the Defendants pre-judgment interest as may be determined by statute and rule;

10.    That this action be certified as a Plaintiffs' class action: and

11.    Pursuant to Federal Rules of Civil Procedure, Rule 38, Plaintiffs demand a trial by jury on all issues of fact in this action; and

12.    That this court grants such other and further relief as it deems just and proper.

//

///

///

1

2   **DATED** this 21st day of April, 2009.

3                                    **KOELLER, NEBEKER, CARLSON
                                     & HALUCK, LLP**
4

5

6   By   William A. Nebeker
             William A. Nebeker, Esq.
7            Rosary A. Hernandez, Esq.
             Gregory E. Williams, Esq.
8            Valerie R. Edwards, Esq.
             Lisa I. Streu, Esq.
9            *Attorneys for Plaintiff*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

## DEMAND FOR JURY TRIAL

2

3        Pursuant to *Fed. R. Civ. P.* 38(b), Plaintiffs hereby demand a trial by jury to the

4    fullest extent permitted by law.

5        **DATED** this 21st day of April, 2009.

6

7                              **KOELLER, NEBEKER, CARLSON**
                               **& HALUCK, LLP**

8

9                              By____William A. Nebeker_____

10                                  William A. Nebeker, Esq.
                                    Rosary A. Hernandez, Esq.

11                                  Gregory E. Williams, Esq.
                                    Valerie R. Edwards, Esq.

12                                  Lisa I. Streu, Esq.
                                    *Attorneys for Plaintiff*

13

14

15

16

17

18

19

20

21

22

23

24

25